# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 2:22-cr-20105-MSN-atc

TIMOTHY EDWARDS,

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress. (ECF No. 25.) This Motion was referred to the United States Magistrate Judge for report and recommendation. (ECF No. 33.) For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

On May 12, 2022, Defendant was charged with one count of conspiring to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846; one count of possessing with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); and two counts of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant filed the Motion now before the Court on March 27, 2023 challenging the affidavit in support of the search warrant for Defendant's residence in this case and accordingly asking the Court to "exclude the evidence found in his residence, as well as his inculpatory statement." (ECF No. 33 at Page ID 57.)

On July 12, 2023, the Magistrate Judge entered her Report and Recommendation recommending that Defendant's Motion be granted.[1] ("Report," ECF No. 39.) This Court extended the deadline for objections to the Report on July 20, 2023, (*see* ECF No. 40), and the Government filed objections to the Report's proposed findings of fact and conclusions of law on August 8, 2023. (ECF No. 42.) Defendant did not respond to the Government's objections and the time for doing so has passed.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings [and] enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the

---

[1] Parties submitted that a hearing was not necessary in this case and no hearing was held.

2

issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.")  The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas*, 474 U.S. at 150–52.

## FINDINGS OF FACT

The Magistrate Judge set forth proposed findings of fact in the Report. (ECF No. 39 at PageID 91–96.)  The Government levied two objections to this part of the Report. (ECF No. 42 at PageID 123–24.)  Defendant did not file any objections.  Following a *de novo* review of the record, the Government's objections are **OVERRULED**.

First, the Government objects to the Report's statement that Det. Lee (the affiant) did not provide a description of his career, his job, or his employer in the affidavit save for his reference to his "Narcotics Unit." (*Id.*)  In support, the Government points to the inclusion of Det. Lee's title in his signature and in the warrant application and to his statement that the relevant information was received by the Shelby County Sheriff Office's ("SCSO") Narcotics Division. (*Id.*)  The Court finds this objection unavailing because the Report merely states that Det. Lee did not *describe* his job, career, or employer. (*See* ECF No. 39 at PageID 92.)  And upon further review of the affidavit, this Court agrees with that assertion; while Det. Lee's title is included in the affidavit, *descriptions* of *his* career, job, and employer are not.  Rather, Det. Lee references the general experiences of "the affiants" and the SCSO Narcotics Division's participation in the investigation of this case.

3

The Government next objects to the Report's statement that the date parties say SCSO Sergeant Simonsen informed the SCSO Narcotics Division that the DEA was investigating a particular package—June 3, 2021—does not appear in the affidavit. (ECF No. 42 at PageID 124.) In support, the Government avers that the date of June 3, 2021 appears several places in the affidavit and search warrant, including "where the warrant is sworn to and subscribed by Detective Lee, next to the signature of the issuing Judge, and at the base of the page with the date and time that the warrant was issued." (*Id.*) This objection stems from a probable typo in the affidavit. While the Government is correct that "June 3, 2021" appears on multiple occasions in the affidavit, those occurrences reference the date of the affidavit application and officer's return—not the date Sgt. Simonsen provided information on the suspect package at issue. Indeed, the affidavit states that Sgt. Simonsen provided this information on June 3, 2004. (ECF No. 25-1 at PageID 70.)

Accordingly, the Government's objections are **OVERRULED** and the Court **ADOPTS** and incorporates the proposed findings of fact set forth in the Report.

## DISCUSSION

### I.  Evidence Inside the Residence

The basis for Defendant's Motion to Suppress the evidence found in his residence was that Det. Lee's affidavit lacked enough facts to establish the probable cause required for the warrant to issue. (ECF No. 25 at PageID 57–62.) Predicting the Government would point to the good faith exception, Defendant also argued against application of that exception. (*Id.* at PageID 63–65.) The Report recommended granting Defendant's Motion to Suppress on the grounds that the affidavit did not provide probable cause for the warrant and that the good faith exception does not apply. (ECF No. 39 at PageID 105, 110.) The Government objected to both proposed conclusions

of law.  (ECF No. 42 at PageID 125–31.)  For the reasons below, the Court **OVERRULES** the Government's objections and **ADOPTS** the Report's proposed findings.

      A.      **Probable Cause for the Warrant**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

An affidavit in support of a warrant therefore "must contain facts that demonstrate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Grant*, No. 21-3686, 2023 WL 119-399, at *2 (6th Cir. Jan. 6, 2023) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).  The connection—or "nexus"— "between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"  *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc)).  "If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant."  *Id.* (citing *Carpenter*, 360 F.3d at 595).

The crux of parties' disagreement on probable cause is whether, given that this case involves an alleged drug dealer and his residence, the affidavit sets forth sufficient facts to create probable cause and thus support the issuance of the warrant.[2]  As the Magistrate Judge noted, "[t]he

---

[2] Defendant does not dispute that the Briona Street address is his residence.  (*See* ECF No. 25 at PageID 54, 55.)  Nor does he argue there was not probable cause to believe he was involved in drug activity; he does not dispute that the packages containing methamphetamine and marijuana were addressed to him and that he was attempting to pick them up from the UPS stores.  (*See* ECF No. 25 at PageID 53.)

5

Sixth Circuit has acknowledged its 'struggle[]' in deciding when evidence that an individual is selling drugs creates probable cause to search that individual's home." (ECF No. 39 at PageID 100–01 (quoting *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021)).) A Sixth Circuit panel recently described the current landscape this way:

> [Defendant's] challenge hits on a common pressure point of our nexus requirement jurisprudence as it applies to drug distribution cases. Our caselaw has rejected the proposition that a defendant's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home," *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)), while also recognizing that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live," *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). We have balanced the tension between these two propositions "in fact-specific ways," considering the recency, frequency, and quantity of the drug dealing and its proximity to the residence as a few of the dividing lines. *See United States v. Reed*, 993 F.3d 441, 448-49 (6th Cir. 2021). For example, affidavits describing low-volume drug activity or drug activity in the distant past have been deemed insufficient, *see, e.g., Brown*, 828 F.3d at 378-80, 382-84, while affidavits describing large quantities of drugs routinely distributed as part of an "ongoing" drug operation have been approved, *see, e.g., United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009).

*United States v. James*, No. 22-3714, 2023 U.S. App. LEXIS 17967, at *7-8 (6th Cir. July 13, 2023). Whether probable cause exists in this situation is thus an intensely fact-specific inquiry.

The Report ultimately finds that the facts in the affidavit are not enough to establish probable cause. (ECF No. 39 at PageID 101.) According to the Magistrate Judge, the affidavit contains only two pieces of information that could furnish the requisite nexus between Defendant's alleged drug dealing and his house: (1) "the affiant's knowledge and experience regarding drug dealers keeping evidence of their crimes at their homes" and (2) the affidavit's indication that Defendant and Oliver were engaged in ongoing drug activity, since such activity can create a nexus to search the residence. (*Id.* at PageID 99–100.) As to the affiant's knowledge and experience, that alone cannot establish a sufficient nexus. (*Id.*) As to evidence of *ongoing* drug activity, the Report finds there is not enough of it. First, the only date that appears in the affidavit references a

6

date in 2004, and there are no other reference points to suggest the relevant events occurred more recently than that. (*Id.* at PageID 101–02.) Second, the two options set forth in *Grant* for showing the requisite nexus were not applicable here: the evidence in the affidavit did not show that Defendant and Oliver were "major players in a large, ongoing drug trafficking operation," and no case has found "recent, reliable evidence of drug activity" to be sufficient in creating probable cause. (*Id.* at PageID 102–05.)

This Court, having reviewed the record in this matter *de novo* and the Report's proposed finding as to probable cause, agrees with the Report's conclusion and **ADOPTS** it as its own for the reasons expressed therein. Notwithstanding the confusion in this Circuit over the amount of evidence required to establish a nexus to a residence in the case of drug dealers, the Sixth Circuit has said that "[a]t a minimum, we have required 'facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.'" *Grant*, 2023 WL 119399, at *3 (quoting *Brown*, 828 F.3d at 383). At most, the affidavit states that Defendant and Oliver drove a car, albeit registered to their address, home after they left the UPS Store without the package they went to the UPS Store to retrieve. (ECF No. 25-1 at PageID 70.) That fact alone does not establish probable cause to believe that the residence was used in drug trafficking.

      **B.**      **Good Faith Exception**

Generally, evidence seized during an unconstitutional search should be excluded. *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). "But because the exclusionary rule seeks to deter *police* misconduct rather than punish the legal errors of judges, the Supreme Court has identified an exception when an officer executes a warrant in reasonable reliance on a neutral magistrate's finding of probable cause." *James*, 2023 U.S. App. LEXIS 17967, at *8 (citing *Leon*,

468 U.S. at 916). Under this exception—dubbed the "good faith exception"—exclusion is not required if the evidence was "obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). "In determining whether police acted in good faith, the 'inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Westley*, 2023 U.S. App. LEXIS 22357, at *28 (6th Cir. Aug. 22, 2023) (quoting *Leon*, 468 U.S. at 922 n.23). An officer's reliance on a warrant cannot be reasonable in the following four circumstances:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*Id.* (citing *Laughton*, 409 F.3d at 748). The third scenario, which is the one at issue in this case,[3] involves the so-called "bare bones" affidavit. "'Bare bones' affidavits are those 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *James*, 2023 U.S. App. LEXIS 17967, at *9 (6th Cir. July 13, 2023) (quoting *Reed*, 993 F.3d at 450). "Relevant in the residential nexus context, the good faith exception requires a minimally sufficient nexus—one that provides 'some plausible connection' between the criminal activity and the place to be searched." *Id.* at 8–9 (quoting *Brown*, 828 F.3d at 385–86). "If the reviewing court is 'able

---

[3] Defendant believes the fourth scenario applies to this matter, (ECF No. 25 at PageID 64), while the Government argues that the third one is most applicable (ECF No. 29 at PageID 83). The Court agrees with the Government that the facts of this case implicate the third limitation on the good faith exception. The fourth foresees situations such as a warrant's failure "to particularize the place to be searched or the things to be seized." *Leon*, 468 U.S. at 922. Here, the place to be searched is particularized—the question is whether there was probable cause to search it. The items to be seized are also specified.

to identify in the averring officer's affidavit some connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *Laughton*, 409 F.3d at 749–50).

The Government contends that "the officers were reasonably entitled to rely on the warrant in searching the house." (ECF No. 29 at PageID 83.) Defendant counters that the Court in *Grant* encountered similar facts as those here and found that those facts did not support applying the good faith exception. (ECF No. 25 at PageID 64.) The Report concludes that whether this exception should apply here is a "close call," but ultimately finds that the affidavit does not meet the good faith standard and that the Government did not meet its burden to show that the officer was reasonable in relying on the warrant. (ECF No. 39 at PageID 107.) The Government objects to this proposed conclusion of law, arguing that there were sufficient facts that "Detective Lee could reasonably conclude that the defendant was an ongoing drug trafficker such that there was a sufficient nexus between the evidence sought and the Defendant's home." (ECF No. 42 at PageID 130.)

This Court also believes this case presents a "close call," but ultimately agrees with the Report that the affidavit does not meet the good faith standard and that the Government has not shown the officer's reliance on the warrant was objectively reasonable. (*See* ECF No. 39 at PageID 107.) The Report indicates that the facts in the affidavit that could arguably establish a nexus were that (1) Defendant had a prior drug charge, (2) he and Oliver were seeking to retrieve the suspect packages from the UPS Store, and (3) in the affiant's experience, evidence of drug dealing is typically maintained in residences. (*See id.*) The first two facts do not establish any connection

9

between the alleged drug activity and Defendant's residence and thus do not meet the "minimally sufficient" threshold. Unlike other cases in which the requisite connection was established based on temporal or spatial proximity to observed drug deals, the illegal activity alleged in the affidavit here occurred at UPS Stores—not in or around Defendant's residence. And while the car used in attempts to pick up the packages was registered to the residence, that fact alone is not enough to establish a connection. *See Brown*, 828 F.3d at 383 (finding that "[a] more direct connection was required" before a car that was registered to the defendant's residence and that had previously tested positive for narcotics could support a search of the residence). Further, the Report was correct in its conclusion that an affiant's experience does not constitute a sufficient nexus. (*See id.* at PageID 108–10 (citing *Brown*, 828 F.3d at 385).) In *Brown*, the good faith exception did not save a residential search even though the affiant attested that his and others' training and experience supported the idea that drug traffickers tend to keep items of the sort mentioned in the affidavit in their homes and cars. *Brown*, 828 F.3d at 378.

Because the affidavit did not create probable cause and the good faith exception cannot apply, the Court **ADOPTS** the Report's proposed finding that Defendant's Motion to suppress the fruits of the search of his residence be granted.

**II.     Defendant's Statements**

Defendant also argued that his inculpatory statement that everything law enforcement found in the house was his should be suppressed. (ECF No. 25 at PageID 62–63.) He averred that it was subject to exclusion as fruit of the poisonous tree (the tree being the illegal search) and that even though he made the statement after receiving his *Miranda* warnings, those warnings did not cure the taint of the illegal search, "as there was insufficient attenuation between the initial illegality and the *Miranda*-warned statement." (*Id.* at PageID 62.) The Government disagreed,

10

arguing that "there was not an illegal search of [Defendant's] residence" and that Defendant's waiver of his *Miranda* rights was otherwise "voluntary, knowing and intelligent." (ECF No. 29 at PageID 85.) The Report found that there were actually two sets of incriminating statements[4] and that the attenuation doctrine saved neither of them, meaning that they should be suppressed as well. (ECF No. 39 at PageID 115.)

Under the attenuation exception to the fruit-of-the-poisonous tree doctrine, a court considers "whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Waide*, 60 F.4th 327, 339 (6th Cir. 2022) (quoting *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008)). Three factors "guide the attenuation inquiry: 'the temporal proximity of the unlawful [conduct] and the emergence of the incriminating evidence at issue, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.'" *Id.* (quoting *United States v. Williams*, 615 F.3d 657, 669 (6th Cir. 2010)) (alterations in original). The Government bears the burden of demonstrating "purgation" of an unlawful invasion's primary taint. *United States v. Shaw*, 464 F.3d 615, 626 (6th Cir. 2006) (citing *Brown v. Illinois*, 422 U.S. 590, 604 (1975)).

Here, the primary illegality is the search of Defendant's residence when there was insufficient probable cause to support the warrant, meaning the question before the Court is whether Defendants' statements were a result of "exploitation of that [search] or instead by means

---

[4] Defendant only moved to suppress the second set of statements, but the Report recommends suppressing both. (*See* ECF No. 39 at PagID 110 n.13.) The Government did not object to this part of the Report, so the Court will consider both sets of statements.

11

sufficiently distinguished to be purged of the primary taint." *See Waide*, 60 F.4th at 339 (quoting *Pearce*, 531 F.3d at 381).

### A.     First Set of Statements (Outside Defendant's Home)

While Defendant's residence was being processed (but before it was searched), Defendant walked up and told officers that 4889 Briona St. was his residence, that he sold marijuana, that his wife had been detained for picking up his package, and that they could find a large quantity of marijuana in his den and U.S. currency in a bedroom closet. (ECF No. 29 at PageID 76.) Applying the attenuation factors, the Magistrate Judge recommended these statements be suppressed because all three factors weighed against attenuation; (1) the statements were uttered "practically contemporaneous with the illegal search," (2) there were no intervening circumstances between the preparations to search the home and these statements, and (3) the officers' actions were purposeful in that they were investigatory. (ECF No. 39 at PageID 112–13.)

Having reviewed the Report and the Government's objections, the Court **ADOPTS** the Report's proposed finding as to this set of statements because it does not find the attenuation factors to support attenuation as to these statements and does not find that the Government has succeeded in carrying its burden to show attenuation.[5]  As a threshold matter, the Court notes that Defendant has not argued that any of his statements in this matter were not voluntary, so the Court need not delve into that question.  Regarding the first attenuation factor, Defendant made these statements "[w]hile the scene was being processed" and "[a]s [Defendant] was being detained."

---

[5] The Report finds fault with the Government's failure to demonstrate attenuation as to this set of statements. (ECF No. 39 at PageID 113.)  Since Defendant did not specifically challenge the admissibility of these statements in his Motion to Suppress, this Court would not have expected the Government to do so in its Response.  The Government did not, however, attempt to meet this burden or acknowledge this issue in its Objections to the Report either.

(ECF No. 29 at PageID 76.) The temporal proximity of these statements to the search thus weighs against a finding of attenuation.

Second, the Court has not identified any intervening circumstance to support attenuation, nor has the Government provided any. Intervening circumstances are "events that interrupt the causal connection between the illegal act and the possibly tainted consent or confession." *United States v. Smith*, 919 F.3d 1, 11 (1st Cir. 2019) (quoting *United States v. Delancy*, 502 F.3d 1297, 1310 (11th Cir. 2007)). The facts here indicate that Defendant volunteered these statements as his residence was being prepared for a search and as he was being detained. As the Report explains, "the spontaneity of a defendant's statement can, in certain circumstances, demonstrate that he acted 'of free will unaffected by the initial illegality.'" (ECF No. 39 at PageID 113 (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 108–09 (1980)) (internal quotations omitted).) But such circumstances foresee a separate trigger than the illegality. In *Rawlings*, for example, the defendant made the statement while being unlawfully detained, but in response to another's prompt to make the statement. *Rawlings*, 448 U.S. at 108–09. No facts suggest any similar trigger occurred here.

The purpose and flagrancy of the official misconduct also weighs against attenuation. This factor "is in many cases the most important because 'it is tied directly to the rationale underlying the exclusionary rule, deterrence of police misconduct.'" *Shaw*, 464 F.3d at 630 (quoting *Reed*, 349 F.3d at 464–65). However, "'purposeful and flagrant' misconduct is not limited to situations where the police act in an outright threatening or coercive manner . . . ." *Id.* (citing *Dunaway v. New York*, 442 U.S. 200, 218–19 (1979)). Indeed, "the requisite 'quality of purposefulness' can be demonstrated when the arrest, in design and execution, is investigatory in nature." *Id.* (citing *Brown*, 422 U.S. 590). Here, the search—which the Court has found lacked probable cause and

13

cannot be saved by the good faith exception—was investigatory in nature and thus satisfies the "purpose" factor in the attenuation doctrine.

The Court **ADOPTS** the Report's proposed conclusion of law that these statements should be suppressed.

> **B.** **Second Set of Statements (at Station)**

Defendant made additional incriminating statements after being *Mirandized* at the SCSO facility. (ECF No. 39 at PageID 110–11.) The Magistrate Judge found the attenuation factors to also weigh against attenuation as to these statements: (1) Defendant was taken directly to the SCSO facility from the residence, thus demonstrating temporal proximity, (2) the Government had not offered any intervening circumstances, and (3) Defendant's interrogation was purposeful. (*Id.* at PageID 114.)

The Court **ADOPTS** the Report's proposed finding as to these statements as well, noting at the outset that the Government carries the burden of demonstrating attenuation and has not offered anything to meet that burden here. Considering the factors, the temporal proximity of these statements to the search does not suggest attenuation. Temporal proximity is often "an ambiguous factor," *Shaw*, 464 F.3d at 627 (quoting *Dunaway*, 442 U.S. at 220), and "[t]here is no bright-line rule defining" it. *United States v. Smith*, 919 F.3d 1, 11 (1st Cir. 2019) (quoting *United States v. Delancy*, 502 F.3d 1297, 1310 (11th Cir. 2007)). The Sixth Circuit has found that time periods ranging from 20 minutes to an hour were insufficient to purge the taint of unlawful action. *See Lopez-Arias*, 344 F.3d at 630 (collecting cases); *see also Waide*, 60 F.4th at 339 (finding that temporal proximity favored suppression where "the entire encounter took place in the course of

one afternoon").[6]  While parties have not provided an exact timeframe, they agree that Defendant was taken directly to the SCSO facility from the residence after the search, which the Court finds sufficient to establish temporal proximity.  (ECF No. 39 at PageID 114.)

Second, the Court is unaware of any intervening circumstances given the facts presented that would indicate attenuation.  Like the Magistrate Judge, this Court considers the previous statements in front of the residence and the *Miranda* warnings to constitute the only plausible intervening circumstances.  But the previous statements have been ruled fruit of the illegal search and the *Miranda* warnings are not sufficient, on their own, to purge the taint of the search, especially since the other factors weigh against attenuation.  *See Brown*, 422 U.S. at 602–03.

The Court also finds that the purpose of the interrogation was investigatory in nature, and thus does not support attenuation.

For these reasons, the Court **ADOPTS** the Report's proposed conclusion of law that these statements should be suppressed.

## CONCLUSION

For the reasons set forth above, the Report is **ADOPTED** in full.  The Government's objections to the Report's proposed findings of fact and conclusions of law are **OVERRULED**.  Defendant's Motion to Suppress (ECF No. 25) the evidence obtained from the search of his residence and his statements is **GRANTED**.

---

[6] As the Court in *Smith* noted, however, the Eighth and Eleventh Circuits have found that time periods of 10-15 minutes are sufficient to find attenuation.  *Smith*, 919 F.3d at 11 (citing *United States v. Whisenton*, 765 F.3d 938, 942 (8th Cir. 2014) ("[F]ifteen minutes is sufficient to demonstrate an attenuation of the illegality.") and *United States v. Myers*, 335 F. App'x 936, 939 (11th Cir. 2009) (unpublished per curiam opinion) (finding ten minutes sufficient attenuation where . . . the defendant was not handcuffed or detained and law enforcement agents were polite and non-threatening)); *see also United States v. Barnum*, 564 F.3d 964, 972 (8th Cir. 2009) (collecting cases supporting that nine or ten minutes is sufficient to find taint was purged).

**IT IS SO ORDERED**, this 29th day of September 2023.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE
